IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MARY ANNE KIRGAN and )
ROBERT S. KIRGAN, )
 )
    Plaintiffs, )
 )
v. ) Civil Action No. 1:17-cv-00327
 )
MANUFACTURERS AND TRADERS )
TRUST COMPANY d/b/a M&T BANK, )
 )
    Defendant. )

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Plaintiffs Mary Anne Kirgan and Robert S. Kirgans' Complaint, as successor trustees to the Plitt Trust, seeking to remove M&T as the corporate co-trustee of the Clarence Manger and Audrey Cordero Plitt Trust (the "Trust"). Plaintiffs seek a declaratory judgment for removal of Defendants as corporate trustee and also bring a claim for breach of fiduciary duty. Defendants also seek declaratory judgment on a number of issues against Plaintiffs in addition to a breach of fiduciary duty claim.

**I. Background**

Plaintiffs filed their complaint in this Court on March 21, 2017, alleging four counts against Defendants. Plaintiffs

1

amended their complaint on August 29, 2017, bringing five counts against Defendants. Plaintiffs brought Count I Declaratory Judgment for Plaintiffs Right to Change the Corporate Trustee, Count II Removal of M&T Bank as Corporate Trustee, Count III Breach of Contract, Count IV Breach of Fiduciary Duty, and Count V Fraud.

Prior to trial, the Court granted summary judgment for M&T on the Kirgans Count III (breach of contract) and Count V (fraud). The Court also ruled that based on the 1985 Order from the Circuit Court for Baltimore City, M&T could only be removed for cause. This ruling dismissed Count I. This left only Counts II and IV and the Counterclaims for the Court to decide at trial. This Court began a bench trial on February 21, 2018, which continued until February 22, 2018.

## II. Findings of Fact

Based on the evidence adduced at trial, the Court makes the following findings of fact.

1. The Plitt Trust is a testamentary charitable trust created by the Last Will and Testament of Clarence Manger Plitt (the "Will"). Mr. Plitt signed the Will in 1976 and died four months later.

2. Prior to his death, Mr. Plitt lived with his long-time partner, Mary E. Mc.C. Kirgan ("Mary Kirgan"), and her children Plaintiffs Mary Anne Kirgan and Robert Kirgan.

2

Clarence Plitt raised Mary Anne and Robert beginning from the ages of 5 and 10 respectively. Although Mr. Plitt and Mary Kirgan never married, the Kirgan children considered Mr. Plitt to be their stepfather. The Kirgans spent considerable time with Mr. Plitt during his life.

3. During the time Mr. Plitt lived in Mary Kirgan's home, he spoke of his intentions for the Trust and his philosophy of charitable giving. He wanted to set up a trust that donated money to educational institutions specifically to provide students with loans.

4. The Will provided that "the original Trustees of this trust shall be the First National Bank of Maryland and Mary E. McC. Kirgan, if living."

5. After Mary Kirgan died the Will provided that she be succeeded by two individual co-trustees. When Mary Kirgan passed away in 2004, Robert and Mary Anne Kirgan became the successor individual co-trustees of the Plitt Trust.

6. The corporate trustee First National Bank of Maryland was acquired by M&T Bank. M&T is based in New York.

7. Following Mr. Plitt's death, Mary E. McC. Kirgan, one of the original named trustees in the Will, contested the Will. The Will was probated in Maryland. The Maryland Court issued an order that M&T Bank could only be removed for cause.

8. The Trust awards funds to educational institutions that agree to use the funds for student loans.

9. The Will requires the trustees to distribute the entire net income generated by the trust at periodical intervals no less frequent than annually unto and among educational institutions as they shall from time to time select and determine in the respective proportions among such institutions as the trustees shall determine.

10. The Will establishes requirements for distribution of funds from the Plitt Trust to educational institutions for school loans. Specifically, the Will requires funds from the Plitt Trust to be used by educational institutions to make loans to deserving secondary school, college or graduate students, who by reason of poor or less than ample family financial circumstances, need monetary assistance to embark upon or continue their education. Selected educational institutions must agree to use funds received from the Plitt Trust in accordance with the terms of the Will.

11. The Will identifies considerations that are left to the discretion of educational institutions that receive funds from the Plitt Trust. For example, the selection of students, loan amounts, repayment dates, and other terms and conditions pertaining to loans shall be determined from

time to time solely by the respective educational institutions(s), provided that the standards and criteria employed in making such determinations shall not discriminate against any particular type or category of student.

12. The Will precludes the Plitt Trust from having any right, claim or interest of any kind in any interest or principal repayment emanating from loans made by the respective educational institutions. Instead, to be used by respective lending educational institutions for such specific uses in furtherance of their educational purpose as they shall desire from time to time.

13. The Will prohibited any payments or contributions from the income of the trust except in furtherance of charitable, religious, scientific, literary or other educational purposes. However, payments of trustees' commissions, expenses, and all other charges or costs reasonably incurred from time to time in connection with the administration of the Plitt Trust were to be deemed in furtherance of said purposes.

14. Mr. Plitt prepared a Memorandum that accompanied the Will that discussed his personal philosophy; however, he acknowledged that the trustees need not look beyond the four corners of the Will instrument and that the Memorandum

was not intended to be binding in any legal sense on the trustees.

15. Kenneth Hornstein, an employee of First National Bank of Maryland (and later M&T) from 1990 until March 2011, was the Trust officer who oversaw the responsibilities for the Plitt Trust. He worked with Mary E. McC. Kirgan, who was then the individual trustee. When Mary E. McC. Kirgan died in 2004, Mary Anne Kirgan and Robert Kirgan became the successor individual trustees by appointment. The trustees oversaw and issued school loan contracts on behalf of the Trust.

16. In the early years of the Trust's existence, the trustees established a protocol by which the Trust carried out its charitable giving. Each year, the individual trustee selected the educational institutions that would receive the Trust's grants and the amount of grant that each institution would receive. One or all of the trustees then wrote the contracts between the Trust and the school that bound the institution to use the received funds in accordance with the Will. The contracts, which were negotiated between the schools and the Trust, required the schools to use loan repayments for additional student loans.

17. Mr. Hornstein testified that Mary E. McC. Kirgan prepared and required schools to sign contracts when she was the individual trustee for the Plitt Trust, and some were countersigned by M&T.

18. Over the years both the corporate trustee and the individual trustees made suggestions for the contract language, although it is unclear who may have been the original drafter in each case. Both sides presented evidence that the other trustees had a hand in crafting or suggesting language for the contracts. Many of the school contracts are no longer available.

19. M&T presented evidence of two instances, once in 1993, and again in 1996 where Mr. Hornstein, who at the time was the fiduciary advisor for First National Bank of Maryland (later acquired by M&T), reached out to Mary E. McC. Kirgan to change the contract language. Mary Kirgan declined to change the contracts. There are no signed contracts with schools that appear to contain Mr. Hornstein's suggested language.

20. M&T presented evidence that after Mary Anne Kirgan and Robert Kirgan became successor individual trustees they sought to make additional changes in the contracts. Specifically, in the agreement with Wellesley they sought to change the loan fund name to "Plitt Kirgan Loan Fund"

instead of "The Plitt Loan Fund," which was the name of the fund in past agreements.

21. M&T argued at trial that the Kirgans also sought additional contract changes. Prior to 2004 when the Kirgans became successor trustees the contracts did not include terms regarding interest rates to be charged, grace and deferment periods, preference for students with co-signed loans, or a requirement that life insurance be taken out on students who do not have a co-signer and receive loans in excess of $20,000.

22. In one instance in August 2013, Mary Anne Kirgan signed an "Amendment to Agreement" with Wellesley which provided for additional funding to the Plitt-Kirgan Fund, originally created in 2004. Mary Anne Kirgan was the only trustee of the Plitt Trust who signed the agreement as the "primary trustee."

23. Beginning in 2015, M&T raised concerns regarding several terms of the contracts it alleged were contrary to the terms of the Will. M&T determined that certain sections of the contracts violated the Will's intent and needed to be adjusted.

24. The Kirgans presented evidence at trial that M&T wrote the language in controversy in the contracts. They argued that all contracts the Trust entered into with the schools

prior to 2003, and signed by the bank, contained the language that M&T later said was improper. The Kirgans put forth a February 8, 1996 letter from Ken Hornstein where he wrote: "I have revised language in the first paragraph of Section 2 to eliminate any potential conflict with the terms of the trust regarding a school's subsequent use of loan payments of principal interest." The accompanying template contract contains, in the referenced paragraph, the same language that has since become a source of controversy.

25. Natalie Stengel, M&T's Vice President and corporate representative, communicated M&T's contract concerns to the Kirgans. The trustees adjusted the language and a final, revised, and signed contract for Randolph-Macon, dated August 28, 2015, removed terms that were contrary to the donor intent, including terms regarding interest rates to be charged, grace and deferment periods, preference for students with co-signed loans, or a requirement that life insurance be taken out on students who do not have a co-signer and receive loans in excess of $20,000.

26. The Kirgans put forth evidence at trial, via Ms. Stengel's testimony, that Ms. Stengel initially represented to the Kirgans that changes in the contract needed to take place due to changes in tax or trust laws. Ms. Stengel

9

later recanted this opinion. She opined that some of the signed contracts that were now under question did not initially "go through counsel's office." She also cited to a 2005 Venable opinion letter that opined on the Kirgan's duties and compensation as justification for the positions that M&T took with respect to the Trust starting in 2015.

27. In August 2016, M&T again stated that terms in the contracts had to be compatible with the terms of the Will. M&T worked to revise contracts that contained offending terms.

28. At trial, both sides presented evidence of the opposing parties' management of trust affairs.

29. The Kirgans argued that M&T breached its fiduciary duties by not keeping proper records, using Trust funds to pay Nixon Peabody, not properly selecting schools for fund distribution, sending checks directly to the educational institutions instead of to the Kirgans, and by not communicating in a timely manner.

30. To this effect, Plaintiffs presented evidence at trial, through Ms. Stengel's testimony, that M&T did not record any meeting minutes or keep copies of signed contracts that the Trust entered into prior to 2003.

31. The Kirgans also alleged that by paying Nixon Peabody, the law firm representing M&T at trial, to opine on the

issue of whether the contracts between the Trust and the recipient schools were improper, M&T breached its fiduciary duty. The Kirgans presented evidence that M&T stated it paid for the legal advice, not the Trust.

32. At trial, the Kirgans discussed M&T's process of using an intern to cold-call schools that may be interested in Trust fund disbursements. They also presented evidence that M&T sent Trust funds directly to the schools instead of to the Kirgans for distribution. M&T alleged that the new process was due to a policy change and the checks went directly to the schools as to meet the distribution deadlines.

33. M&T argued that the Kirgans were consistently unresponsive to investment advice. At trial, M&T showed that on many separate occasions M&T reached out to the Kirgans to set up meetings and received no reply.

34. Over the years, M&T suggested a variety of investment strategies and portfolio management suggestions. The Kirgans had little response.

35. In July 2005, the Kirgans requested an opinion from Venable LLP regarding compensation to be paid to the Kirgans by the Plitt Trust for performing duties as managers/co-trustees of the Plitt Trust. Venable LLP sent

its analysis in the form of a letter to Mary Anne Kirgan and Robert Kirgan in December 2005.

36. Prior to the 2005 Venable letter no other compensation analysis for the Kirgans was performed. At the time of her death, Mary E. McC. Kirgan received a total annual compensation of $70,820. In fiscal years 2004 and 2005, Mary Anne Kirgan and Robert Kirgan each received total compensation of $37,000.

37. The Venable Opinion proposed that the Kirgans receive total compensation of $62,750 consisting of $56,000 of salary plus $6,750 of trustee commissions. It also recommended that the Kirgans increase their level of activity as co-trustees.

38. M&T is currently compensated up to $83,000 a year as the corporate trustee.

39. With respect to administering the Plitt Trust, the Kirgans have engaged in selecting the educational institutions that receive distributions and reviewing reports from educational institutions that receive distributions from the Trust.

40. Before the Kirgans became successor trustees, approximately 40 institutions received distributions from the Trust. Since the Kirgans have become co-trustees, five

12

educational institutions have received distributions from the Plitt Trust.

41. In 2016, the Kirgans made a total distribution of $100,000 to Randolph-Macon College and $475,000 to Wellesley.

42. In November 2016, Ms. Stengel told the Kirgans that M&T was seeking to retain someone to give an opinion regarding appropriate trustee compensation. She requested that the Kirgans identify who they wished to use for the compensation analysis. The Kirgans never identified anyone to perform a compensation analysis nor permitted M&T to retain someone to do so.

### III. Conclusions of Law

Based on the evidence presented at trial, the Court considers the two remaining claims by Plaintiffs for Count II Removal for Cause and Count IV Breach of Fiduciary Duty. The Court also considers the Defendant's counterclaims of Count I Declaratory Judgment to conditions of the loans, Count II Declaratory Judgment seeking an order directing a compensation analysis, and Count III Breach of Fiduciary Duty. At trial, Defendants asked for removal of Plaintiffs as trustees.

The governing document in this case, the Will, was executed in Maryland, where Mr. Plitt lived at the time of his death, and has previously been interpreted by Maryland courts applying

Maryland law. The parties agree that Maryland law provides the substantive law to be applied in addressing this case. Accordingly, the Court will apply Maryland law.

Maryland Law sets out the conditions under which a trustee may and must be removed for cause:

(a)(1) A court shall remove a fiduciary who has:

    (i) Willfully misrepresented material facts leading to his appointment or to other action by the court in reference to the fiduciary estate;

    (ii) Willfully disregarded an order of court;

    (iii) Shown himself incapable, with or without fault to properly perform the duties of his office; or

    (iv) Breached his duty of good faith or loyalty in the management of property of the fiduciary estate.

(2) A court may remove a fiduciary who has:

    (i) Negligently failed to file a bond within the time required by rule or order of court;

    (ii) Negligently failed to obey an order of court; or

    (iii) Failed to perform any of his duties as fiduciary, or to competently administer the fiduciary estate.

Md. Code Ann, Est. & Trusts § 15-112 (2015).

The Court finds that M&T's actions, taken in whole, do not warrant cause for removal. Under Section I of the Md. Code Ann, Est. & Trusts § 15-112, subparts iii and iv are relevant here.

The Kirgans argue that M&T has shown itself incapable of performing the duties of a trustee. The burden is on the

Plaintiffs to offer evidence in support of this allegation. The Kirgans proffer that M&T failed in its duties by entering into contracts that go beyond what is permitted in the Will and by failing to maintain complete records of the Trust.

The evidence offered by the Kirgans failed to demonstrate that by entering into the contracts, M&T violated the Will or that M&T's actions showed it is incapable of properly performing the duties of the office. None of the evidence presented showed that M&T's actions were not in the interest of the Trust. While the contracts went through several iterations through the years, and most recently had suggested changes, none of M&T's actions rose to the level of rendering them incapable of performing their duties as trustee.

The Kirgans point to M&T's lack of record keeping as cause for removal. They point mainly to the lack of meeting minutes. This argument fails. Meeting minutes had never existed for the Plitt Trust and were not required by the Will or under Maryland law. Plaintiffs refusal to meet with M&T for years at a time would hardly present a record of meeting minutes in the first place.

Subpart IV of section one of Md. Code Ann, Est. & Trusts § 15-112 notes that the court shall remove a fiduciary for breach of good faith and loyalty to the Trust. The Kirgans allege that they were misled by M&T with regard to the revisions of the

school contracts. While the parties did not see eye-to-eye on what, if any revisions were needed for the contracts, the Court does not find that M&T's actions breached a duty of good faith or loyalty. There was no evidence at trial that demonstrated that M&T's actions were outside the bounds of protecting the interests of the Plitt Trust. For these reasons, the mandatory provisions of Section § 15-112 do not require M&T's removal.

The discretionary provisions of Section § 15-112 also do not warrant M&T's removal. As stated above, while M&T and the Kirgans had disagreements, there was no evidence to show that M&T's actions breached their duties to warrant cause for removal. For the reasons outlined, Count II fails.

Section § 15-112 of the Maryland Trust Code provides that a fiduciary may be removed for failing to perform any of its duties. M&T has a duty to "administer the [Trust] reasonably under the circumstances, in accordance with the terms and purposes of the trust and the interests of the beneficiaries." Md. Code Ann, Est. & Trusts § 14.5-801. To prove that M&T breached its duty under Maryland law, the Kirgans must show "that [1] the trustee has a duty and [2] has been derelict in the performance of this duty, and offer evidence in support of this allegation." Jacob v. Davis, 738 A.2d 904, 915 (Md. Ct. Spec. App. 1999) (quoting Goldman v. Rubin, 441 A.2d 713 (1982)). Once the Kirgans have come forward with evidence in

this regard, the burden shifts to M&T to disprove the allegations.

The Kirgans have not carried their burden in this regard. The Kirgans argued that a breach occurred by M&T signing contracts that are now being reviewed for compliance with the Will, and by not keeping some of the records.

While M&T has admitted that some past contracts are now undergoing revisions, the evidence at trial showed that M&T has been working to reform the school contracts to ensure that they comply with the Will. M&T even sought out a legal opinion from outside counsel regarding the contract terms. Furthermore, Plaintiffs themselves sought to add loan terms that caused alarm for M&T prompting review.

The evidence showed that Plaintiffs sought to require educational institutions to include loan terms for recipients of funds from the Plitt Trust that M&T believed were contrary to the Will's intent. For example, the Will states that the conditions of the loan shall be determined solely by the respective educational institutions. Plaintiffs attempted to require specifics such as interest rate, grace and deferment periods, preference for students with co-signed loans and a requirement for life insurance in some cases. M&T advised that these terms would go against the intention of the Will and thus

17

warranted review. In their dealings with the contracts M&T did not go so far as to breach their fiduciary duty.

In regards to record keeping, M&T's actions did not breach their fiduciary duty. Formal meeting minutes were not required under the Will or the law. Further, Plaintiffs and the original individual trustee, Mary E. McC. Kirgan, dealt primarily with the educational institutions and obtained signatures for school contracts. Accordingly, they had the signed school contracts, and thus, had an obligation to retain such records. See, e.g. Restatement (Second) of Trusts, § 171 ("The trustee is under a duty to the beneficiary not to delegate to others the doing of acts which the trustee can reasonably be required to personally perform.").

The Court also finds that the Kirgans failed to respond and meet with M&T to discuss investments in the portfolio and institutions for loan distributions. These actions made it more difficult for M&T to perform their duty, but they performed it nonetheless. Likewise, M&T presented evidence that the Kirgans fail to meet to discuss investments and contract language. This failure to meet does not warrant removal as trustees.

In Count I of M&T's Counterclaims, M&T seeks a declaratory judgment that the Kirgans (i) may not require educational institutions receiving funds from the Trust to use repaid student loans for additional student loans, (ii) may not require

educational institutions receiving funds from the Trust to include particular loan terms for student loans, and (iii) may not impose any requirements on educational institutions that are inconsistent with donor intent. In Count II, M&T seeks an order compelling a compensation analysis to be performed by an independent auditor regarding compensation of the Kirgans as individual trustees. Finally, in Count III of M&T's Counterclaims, M&T seeks relief for breach of fiduciary duty.

As to M&T's first request for relief, the will provides that the trust have no interest in any interest or principal repayment from ay loan and that the lending institution use repayments for such specific uses to further their educational purpose as they may desire. The memorandum Clarence Plitt authored before he died, as well as the Will itself, that Mr. Plitt wanted the schools to use repaid student loans to award new loans, however, the will placed no conditions on the monies loaned. The Will is clear that what the schools do with repaid loans is up to the schools, to use for their educational purposes. The trust may not require he lending institution to use loan repayments to make additional student loans.

As to M&T's second request for relief, the Court finds a compensation analysis needs to be done. The trustees' compensation has not changed since 2006. The trustees should promptly arrange for a study and compensation for all trustees.

M&T argues that the Kirgans were slow and at times unresponsive to requests from the Bank. While such actions made matters more difficult for M&T, they did not rise to the level of a breach of fiduciary duty. The investments of the Trust have been managed in a manner that has been adequate. The strategy has been successful enough to equal the performance of M&T's own growth strategy bench mark over ten-year periods ending in 2013 and 2016. There is no basis to conclude that the Kirgans have breached their duty to the Trust to an extent that they should be removed. However, all trustees must promptly meet and set a schedule for regular meetings for conducting business of the Trust and the meetings must be regularly attended by all trustees. All trustees must also meet to arrange for a study of the proper amount of trustee compensation.

Both the Kirgans and M&T Bank shall remain as trustees. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
November 29, 2018